1 | Joseph Arthur Roberts, State Bar No. 156180
2 | LAW OFFICE OF J. ARTHUR ROBERTS
3 | 3345 Newport Blvd., Suite 213
  | Newport Beach, CA 92663
4 | Telephone: (949) 675-9900
5 | Facsimile: (888) 989-9309
  | Email: Joe@JarLegal.com
6 |
7 | Attorneys for Plaintiffs,
  | KENNETH L. KRAL, individually,
8 | and all others similarly situated
9 |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

CV12-01023 GW (OPx)

| | |
|---|---|
| KENNETH L. KRAL, on behalf himself and all others similarly situated,<br><br>      Plaintiffs,<br><br>vs.<br><br>GMAC MORTGAGE, LLC; and DOES 1 through 10, inclusive,<br>      Defendants. | CASE NO.<br><br>Assigned to the Honorable:<br><br><br>**CLASS ACTION COMPLAINT**<br> 1. 15 USC 1641g Violation<br> 2. Unlawful/Unfair Acts §17200<br><br><br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiff KENNETH L. KRAL (referred to as "Plaintiff" or "Plaintiffs"), by and

through his attorneys of record, bring this action against defendants GMAC

1

**CLASS ACTION COMPLAINT**
*KRAL v GMAC MORTGAGE, LLC*

MORTGAGE, LLC ("GMAC") and DOES 1 through 10, inclusive, inclusive ("Defendants") and alleges the following on information and belief, except as to those allegations which pertain to the Plaintiffs:

## I.   VENUE

1.     The Court has subject matter jurisdiction over this action under 28 USC § 1331 wherein the action arises under the Constitution, laws or treaties of the United States and/or under 28 USC § 1332 wherein this is a class action over $10,000,000.00 where at least one plaintiff is diverse from one defendant.

2.     The Court has personal jurisdiction over the defendants in this action by the fact that the Defendants are conducting business in the state of California.

3.     Venue is proper in this Court pursuant to 28 USC § 1392 because the action involves real property located in the Central District of California; and pursuant to 28 USC § 1391(b) and a substantial part of the events or omissions on which the claims are based occurred in this District.

2

**CLASS ACTION COMPLAINT**
*KRAL v GMAC MORTGAGE, LLC*

## II.   **PARTIES**

4.      Plaintiff, KENNETH L. KRAL, at all times mentioned herein relevant to the complaint was the owner of real property commonly known as 13260 SOLOMAN PEAK DRIVE, RIVERSIDE CA 92503.

5.      Defendant, GMAC MORTGAGE, LLC ("GMAC"), has its principal place of business in Fort Washington, PA and regularly conducts business in the State of California as a Foreign Limited Liability Company, created under the laws of the State of Delaware.

6.      Plaintiffs do not know the true names and capacities of the defendants DOES 1 through 10, inclusive, and, as such, names said defendants by such fictitious names.  Plaintiffs will amend the complaint to state the true name and capacity of the DOE defendant(s) when such information is ascertained.

7.      Plaintiffs are informed and believe, and allege thereon, that each defendant is responsible in some manner for the occurrences alleged in the complaint, and that plaintiffs' damages were proximately caused by the defendants at all times mentioned in the complaint.

8.      Plaintiffs are further informed and believe, and allege thereon, that each defendant was the agent, servant, representative, and/or employee of their co-defendants, and in doing the things hereinafter alleged were acting in the scope of

3

CLASS ACTION COMPLAINT
*KRAL v GMAC MORTGAGE, LLC*

their authority as agents, servants, representatives, family members and/or employees, and with the permission and consent of their co-defendants.

9.      Additionally, plaintiffs are informed and believe, and allege thereon, that each defendant assisted, aided and abetted, adopted, ratified, approved, or condoned the actions of every other defendant and that each corporate defendant, if any, was acting as the alter ego of the other in the acts alleged herein.

### III.   General Factual Allegations

10.    That this is not a "foreclosure defense lawsuit". Like millions, KRAL is a homeowner in financial distress. But KRAL does not attempt to defend his failure to pay his mortgage payments as agreed, nor does he seek to challenge the right of the TRUE beneficiary of his home loan to pursue its legal remedies.

11.    That this matter is intended to remedy and prevent further systemic abuses by GMAC in its bankruptcy practices in the name of profit. Said practice includes the widespread use of fabricated transfer documents and false affidavits to create the illusion that individual consumer loans were sold in the time and manner represented in thousands of bankruptcy matters.

12.    That said practice has been implemented by GMAC to increase its own profits. That said practice results in massive cost savings, an unfair competitive advantage and increased revenues accruing to GMAC, as described below.

4

**CLASS ACTION COMPLAINT**
***KRAL v GMAC MORTGAGE, LLC***

13.   That said practice has been implemented by GMAC at the expense of homeowners in financial distress, mortgage backed security trust investors, taxpayers and the integrity of the bankruptcy system.

14.   This matter pleads two alternative theories:  Either the ASSIGNMNETS utilized by GMAC in bankrupfcy matters are what they purport to be OR they are not.

15.   Where the ASSIGNMENTS are what they purport to be, then GMAC is engaged in systemic violations of its obligation to notify consumer borrowers that their mortgage loans have been transferred as required under the Truth in Lending Act.

16.   Where the ASSIGNMENTS are NOT what they purport to be, then GMAC is engaged in a systemic and deceptive business practice that misrepresents that mortgage loans has been transferred in order to prevail in thousands of consumer bankruptcy cases.

17.   That the Truth in Lending Act 131 ("TILA") codified at 15 USC §1641g requires a new creditor to notify the borrower in writing of a transfer in their Note and Deed of Trust ("MLN").

18.   The (hereinafter, the "Transfer Notice") notification must include:

a.   The identity, address, telephone number of the new creditor;

b.   The date of transfer;

**CLASS ACTION COMPLAINT**
*KRAL v GMAC MORTGAGE, LLC*

c. How to reach an agent or party having authority to act on behalf of the new creditor;

d. The location of the place where transfer of ownership of the debt is recorded; and

e. Any other relevant information regarding the new creditor within 30 days of the transfer.

19. 15 USC §1641g was enacted to "ensure [citizens] can actually renegotiate their mortgages if they are in trouble" and to provide "transparency and give borrowers an additional tool to fight illegitimate foreclosure or to negotiate loan modifications that would keep them in their homes." Sen. Barbara Boxer comments made in the Congressional Record – Senate S5098-99 (May 5, 2009).

20. These combined legislative purposes are referred to in this complaint as "due process" rights.

21. That each Plaintiff is informed and believes and alleges thereon that defendant GMAC is a creditor systemically violating 15 USC §1641g.

22. That GMAC has failed to provide thousands of Transfer Notices to class members after executing and recording Assignments of Deeds of Trust that purport to represent GMAC as the new creditor.

23. That these Assignments are filed in the County Records by the tens of thousands.

6

24.     That these Assignments are also filed in thousands of consumer bankruptcies and are used to prove that an individual debtor's Mortgage loan note and deed of trust was granted, assigned and transferred to GMAC on the date and in the manner represented ("Transfers").

25.     That each of the Assignments, offered as evidence in thousands of Motions for Relief from the Automatic Stay, are each supported by a tailored affidavit executed under penalty of perjury by a GMAC agent.  Each affidavit attests to the MLN transfer and therefore, GMAC's standing and status as creditor.

26.     That GMAC is estopped from denying the truth of representations made in each Assignment and supporting affidavit filed in county records and\or filed with U.S. Bankruptcy Courts.

27.     That the Assignments and affidavits are used as evidence to prove that GMAC has standing as a "party in interest" to seek remedies and receive disbursements in thousands of consumer bankruptcy cases.

28.     That based on those GMAC Assignments and affidavits it is almost invariably determined by U.S. Bankruptcy Court Judges that GMAC is a creditor with standing to seek remedies and receive disbursements in thousands of consumer bankruptcy cases.

CLASS ACTION COMPLAINT
*KRAL v GMAC MORTGAGE, LLC*

29.     That, GMAC, as a creditor, obtains orders, receives remedies, obtains Orders, receives cash distributions and attorney fee awards from U.S. Bankruptcy Judges and Trustees in thousands of consumer bankruptcy cases.

30.     That GMAC charges attorney fees related to bankruptcy matters filed under false pretenses to class members and adds them to their loan balances.

31.     **Alternatively**, where in response to this Class Action Lawsuit, GMAC DENIES that it is a new creditor as defined under 15 USC §1641g , that each Plaintiff is informed and believes and alleges thereon that defendant GMAC  is engaged in the business practice of deceiving bankruptcy judges, Chapter 7 trustees, Chapter 11 Trustees, the Office of the United States Trustee, creditors, creditor attorneys, debtors in possession, debtors and debtors attorneys ("bankruptcy players") as to GMAC 's status a secured creditor in thousands of bankruptcy cases filed nationwide.

32.     That the Assignments and affidavits are used as evidence to prove that GMAC has standing as a "party in interest" to seek remedies and receive disbursements in thousands of consumer bankruptcy cases are false.

33.     That the Assignments falsely claim a MLN transaction occurred in the time and\or manner represented.  That said affidavits are false and inaccurate.

34.     That the Assignments, allonges, blank endorsements and affidavits systemically utilized, are false and photo-shopped documents, executed without regard to the truth, collectively designed to CREATE THE ILLUSION OF

8

CLASS ACTION COMPLAINT
*KRAL v GMAC MORTGAGE, LLC*

MORTGAGE LOAN TRANSFERS intended to deceive "bankruptcy players" as to GMAC's standing as a creditor.

35.     That through the use of false and fabricated Assignments, allonges, blank endorsements and affidavits (collectively referred to, "ILLUSINARY TRANSFER DOCUMENTS"), GMAC has implemented a pattern and practice of playing "hide-and-seek" with debtors, judges and other bankruptcy players.

36.     That the ILLUSINARY TRANSFER DOCUMENTS purport to be evidence of GMAC's standing as a creditor in thousands of consumer bankruptcy cases.

37.     That GMAC's standing in thousands of bankruptcy matters has been based on a transfer of an individual Deed of Trust and non-negotiable Promissory Note ("MLNs") that did not occur at all or in the time and manner represented.

38.     That GMAC intentionally conceals the identity of the true parties in interest entitled to enforce the terms of thousands of residential non-negotiable promissory notes (the "MLNs") for its own financial benefit, at the expense of the class and to the detriment of the integrity of the bankruptcy system.

39.     That GMAC owns and\or services thousands of residential home loans many of which have been pledged to private mortgage backed security trusts, government sponsored trusts and government sponsored enterprises like FANNIE MAE and FREDDIE MAC ("GSE's").

**CLASS ACTION COMPLAINT**
***KRAL v GMAC MORTGAGE, LLC***

40.     That these MLNs are non-negotiable instruments.

41.     That after a defaulted borrower files for relief under a chapter of the U.S. Bankruptcy Code, GMAC retains local attorneys ("network attorneys") to appear in each case in which GMAC claims be creditor.

42.     Within each case, the network attorneys are charged with various functions depending on the chapter filed and the facts of each case.

43.     On behalf of GMAC, the network attorneys file proofs of claims, objections to confirmation of proposed plans, other services and most commonly, Motions for Relief from the Automatic Stay (herein out, the "bankruptcy matters").

44.     Since 15 USC §1641g was enacted in 2009, GMAC  has filed no less than 1,185 Motions for Relief of Stay and several hundred of Proofs of Claims with in the Central District of California alone, wherein GMAC  claims to be the party entitled to monies due under the terms of MLNs.

45.     Said network attorneys are financially rewarded by GMAC based on the speed in which the network attorneys obtain Orders from Relief of Stay and complete other bankruptcy matters.  Said network attorneys incur a financial penalty based on the amount of correspondence with GMAC and the amount of evidence the attorney's require "prove-up" and complete bankruptcy matters.

CLASS ACTION COMPLAINT
*KRAL v GMAC MORTGAGE, LLC*

46.     That DOE 1, unidentified agent of GMAC, imposes "technology fees" on GMAC and its network attorneys for correspondence, access and copies of the documentary evidence required to "prove up" and complete bankruptcy matters.

47.     The Pooling and Servicing Agreement of each and every Mortgage Backed Security Trust (hereinafter, "MBST") serviced by GMAC, contemplates no less than THREE true sales of each MLN from originator, to sponsor, to depositor and finally to the designated Trustee of the MBST (the "chain of title").  Where loans are pledged to Government sponsored entities, the multiple MLN transfer model is also implemented to ensure that the ultimate investor or beneficiary of a pool of MLNs is "bankruptcy remote" or "FDIC remote" in the event a loan originator becomes insolvent.

48.     That said structure protects the investor but increases the cost of transferring loans to mortgage trusts and triples the cost of "proving up" actual standing.

49.     That any valid "prove up" that establishes that a MBST or GSE is the current beneficiary of a MLN requires evidence of each of the THREE true sales transactions contemplated in the Pooling and Servicing Agreement of the MBST.

50.     GMAC and its network attorneys are charged for access to each and every document needed to "prove up" the element of standing in the bankruptcy arena.  Said documents include, but are not limited to:  Assignments of Deed of Trust, Corporate

11

Assignments, Promissory Notes, Endorsements, Allonges, Acknowledgements and employee affidavits executed under penalty of perjury.

51.     That the existence of these "technology fees" makes representing the truth of each class loan's "chain of title" cost prohibitive given the scale of GMAC 's national foreclosure and bankruptcy practice.

52.     That in many cases, NO evidence exists that class loans were EVER legally transferred from loan originator through the contemplated chain of title and to Mortgage Backed Security Trusts or GSEs serviced by GMAC .

53.     Rather than incur the cost of "proving up" its own standing or the standing of its principal Mortgage Backed Security Trust, GMAC systemically misrepresents itself to be a "creditor "by proffering ILLUSINARY TRANSFER DOCUMENTS in thousands of bankruptcy cases.

54.     That said documents are fabrications intended to create the illusion of a valid transfer of rights to enforce the terms thousands of non-negotiable promissory notes (the "MLNs"), including the money due.

55.     That GMAC does not transfer MLNs from the MBST to itself for administrative convenience as contemplated in 15 USC §1641; instead, the GMAC ILLUSINARY TRANSFER DOCUMENTS claim that each MLNs that passes through the bankruptcy court is transferred from originator's agent MERS directly to GMAC, not as a servicer but as the direct successor of the loan originator.

**CLASS ACTION COMPLAINT**
***KRAL v GMAC MORTGAGE, LLC***

56.     That the common representation contained in all ILLUSINARY

TRANSFER DOCUMENTS is that GMAC is direct successor of the loan originator,

not the successor of a MBST or GSE.

57.     That this false portrayal of the MLN transfer is asserted in bankruptcy

matters so as to intentionally bypasses any mention of HOW or IF the MLN was

transferred to a MBST or GSE.  GMAC cannot be a loan servicer of a MLN on behalf

of a MBST or GSE until that MBST or GSE actually acquires rights in an MLN.

58.     That the aforementioned fabricated evidence is HIGHLY PERSUASIVE

and authentic in appearance; over 95% of GMAC's Motions for Relief of Stay are

granted without objection.  GMAC's Proofs of Claim are successfully objected to

only 5% of the time.

59.     That the use of the fabricated evidence has a chilling effect on class

debtors and their attorneys.  Said business practice discourages bankruptcy players

from offering objections or from questioning the validity of GMAC's false claims

based on standing.

60.     In addition to cost savings of its practice, GMAC receives trustee payouts

from confirmed plans based on submitted Proofs of Claim supported by fabricated

evidence.  Said payouts are at the expense of unsecured creditors and debtors alike.

**CLASS ACTION COMPLAINT**
***KRAL v GMAC MORTGAGE, LLC***

61.     That after a non-judicial foreclosure sale, class members remain indebted to the true beneficiary for the unsecured note but without credit for the loss of the collateral to GMAC.

62.     Most egregiously, the network attorneys utilize the inducing documents to obtain attorney fees awards from by the bankruptcy judges ranging from $600-1000 for each successful motion for relief of stay.

63.     That said motions are granted and the hundreds of thousands in attorney fees are awarded under false pretenses and based on ILLUSINARY TRANSFER DOCUMENTS submitted in thousand of bankruptcy cases.

64.     That GMAC then charges bankruptcy attorney fees to members of the class thereby increasing total balances and arrearage claims.

65.     That where a MLN is transferred after origination, consumer borrowers have a statutory right to know who the identity of the beneficiary of their MLNs pursuant to 15 USC §1641.

66.     In the alternative, class members and bankruptcy players have a right to court system that is free of deceit and false evidence.

67.     That the degradation of the integrity of our bankruptcy court system cannot be justified in the name of GMAC's cost savings.

**14**

**CLASS ACTION COMPLAINT**
***KRAL v GMAC MORTGAGE, LLC***

68.     That Attorney fees awards and remedies granted by bankruptcy judges and based on GMAC's misrepresentations of MLN transactions are subject to mass disgorgement and reversal.

## IV.   Mr. KRAL's Facts

69. Plaintiffs incorporate these allegations into the claim below as though fully set forth herein.

70. That on or about February November 5, 2009, KENNETH L. KRAL, became indebted to FIRST AMERIGROUP MORTGAGE CORPORATION ("FIRST AMERIGROUP").

71. That KENNETH L. KRAL promised to pay FIRST AMERIGROUP $537,850.00 plus interest for a residential home loan. This promise was placed in the Note and secured by a Deed of Trust on the real property located at 13260 SOLOMAN PEAK DRIVE, RIVERSIDE CA  92503. [Plaintiff's EXHIBIT B includes true copies of the Deed of Trust and Note as originally executed by KRAL, as offered by GMAC to the Bankruptcy Court].

72. That soon after origination, GMAC began claiming to KRAL that it was the authorized servicer of his loan.  In reliance, KRAL began sending payments to GMAC.

73. That KRAL began experiencing financial difficulties, defaulted on the MLN.

15

CLASS ACTION COMPLAINT
*KRAL v GMAC MORTGAGE, LLC*

74. That on January 10, 2011, FRANCO TORRES, Assistant Secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") executed an ASSIGNMENT OF DEED OF TRUST that purported to grant, assign and transfer to GMAC all beneficial interest under the subject Deed of Trust, "Together with the Promissory Note secured by the Deed of Trust and all rights accrued or to accrue under the Deed of Trust."

75. That the ASSIGNMENT OF DEED OF TRUST was purportedly notarized by AMBER BARHAM and recorded in the Riverside County Recorder's Office on January 14, 2011. [Plaintiff's EXHIBIT B-2 includes true copies of the Assignment of Deed of Trust as recorded and offered by GMAC to the Bankruptcy Court].

76. That on January 12, 2011, A SUBSTITUTION of TRUSTEE, naming EXECUTIVE TRUSTEE SERVICES, LLC  dba ETS Services LLC as Trustee, was executed by WILDER GOMEZ on behalf of GMAC, recorded January 25, 2011.

77. That on January 24, 2011, a NOTICE OF DEFAULT was executed by GMAC's agent, EDWARD SIRIWAN and recorded on January 25, 2011.

78. That KRAL received no oral or written notice of any kind as to the purported transfer of the Note and Deed of Trust to GMAC or any MBST, GSE or other party.

16

CLASS ACTION COMPLAINT
*KRAL v GMAC MORTGAGE, LLC*

79. That KRAL has never received a written notice from GMAC or any other party that complies with the requirements of Truth in Lending Act 131 ("TILA") codified at 15 USC §1641g.

80. That the plain languages of the ASSIGNMENT of DEED of TRUST states that GMAC became the creditor of the MLN, pursuant to 15 USC §1641, on January 10, 2011.

81. That more than 30 days have elapsed since GMAC became the new creditor of the subject MLN as evidenced by the ASSIGNMENT OF DEED OF TRUST purportedly executed on January 10, 2011.

82. That on May 19, 2011, KRAL filed for chapter 7 bankruptcy protection in the Central District of California (Case #6:11-bk-26579-SC).

83. That June 24, 2011, GMAC filed a NOTICE AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY as to the subject property in KRAL's bankruptcy case. [EXHIBIT A:  GMAC's Motion for Relief from the Automatic Stay with supporting affidavit].

84. That said Motion was supported by copies of exhibits that included 1) the subject non-negotiable Adjustable Rate Note; 2) a Blank endorsement of the Note purportedly executed by an agent of AMERIGROUP MORTGAGE; 3) the subject DEED OF TRUST with riders; 4) a legal description, 5) the subject ASSIGNMENT of DEED OF TRUST; 6) the aforementioned SUBSTITUTION

17

CLASS ACTION COMPLAINT
*KRAL v GMAC MORTGAGE, LLC*

of TRUSTEE; and the 7) the aforementioned NOTICE of DEFAULT.

[Collectively, EXHIBIT B:  GMAC exhibits supporting KRAL Motion for Relief from the Automatic Stay].

85. That GMAC, by an through its network attorneys, PITE DUNCAN LLP went to great lengths to create the illusion that GMAC was a creditor and the party entitled to enforce the terms to the subject MLN including submitting ILLUSINARY TRANSFER DOCUMENTS.

86. That the exhibits utilized by GMAC in the motion for relief of stay in the KRAL bankruptcy matter are ILLUSINARY TRANSFER DOCUMENTS that demonstrate a text book example of GMAC's deceptive business practice.

87. That GMAC manufactured an official looking ASSIGMENT of DEED of TRUST and offered it along with a false affidavit so as to deceive bankruptcy players into accepting GMAC's version of the chain of title of the KRAL MLN.

88. That these ILLUSINARY TRANSFER DOCUMENTS allow GMAC to assert standing to obtain relief of stay without the need to reveal the true beneficiary of thousands MLNs; to assert standing without the need to prove up a complex chains of title; to save on its own cost of litigation and attorney fees and to receive attorney fee awards and trustee distributions.  That through the use of ILLUSINARY TRANSFER DOCUMENTS, GMAC effectively chills debtor and trustee opposition in the Bankruptcy matters and falsely induces Courts to

18

**CLASS ACTION COMPLAINT**
*KRAL v GMAC MORTGAGE, LLC*

grant relief, award attorney fees and allow Proofs of Claim at the lowest possible cost to GMAC.

89. That in support of its Motion for Relief in KRAL, GMAC attempted to create the illusion that the subject MLN was transferred in the manner represented in the ASSIGNMENT OF DEED of TRUST by offering a false declaration executed under penalty of perjury.

90. The KRAL relief of stay motion is also supported by a declaration by GMAC "Bankruptcy Specialist", JOHN CASTAGNA wherein he asserts under penalty of perjury that the MLN was assigned to GMAC as represented in the incorporated ASSIGNMENT of DEED of TRUST.  CASTAGNA also claims that GMAC is in possession of the Note transferred to GMAC by the ASSIGNMENT of DEED of TRUST.  [EXHIBIT B:  GMAC exhibits supporting KRAL Motion for Relief from the Automatic Stay].

91. That the Assignment and the CASTAGNA declaration are fabrications, ILLUSINARY TRANSFER DOCUMENTS offered as evidence in the KRAL bankruptcy matter so as to induce the granting of relief of stay where no standing exists, reduce GMAC 's cost of doing business, obtain attorney fee awards under false pretenses and pass the cost on to debtors through increased loan charges.

19

CLASS ACTION COMPLAINT
*KRAL v GMAC MORTGAGE, LLC*

92. That KRAL filed a written opposition to the GMAC Motion for Relief of Stay despite the ILLUSINARY TRANSFER DOCUMENTS and objected to the allegation that GMAC was a "party in interest".

93. That KRAL was forced to incur attorney fees, time and resources to defend against the GMAC motion where the motion was supported by fabricated evidence.

94. That the hearing on the matter was originally scheduled for July 26, 2011 was continued four times until the Bankruptcy Court DENIED GMAC's Motion for Relief of Stay without prejudice on October 4, 2011.  [EXHIBIT C:  ORDER denying GMAC's Motion for Relief from the Automatic Stay without prejudice].

95. That despite losing the Motion, GMAC charged KRAL and attorney fee and added it to his loan balance.

96. That GMAC continues to utilize this deceptive practice against similarly situated class members.  That even though KRAL prevailed in the Motion, does not justify GMAC's use of this deceptive practice against class members.

97. The Chapter 7 trustee, Patricia Zimmerman did not oppose the GMAC Motion.

98. That the claims before the Court are vested in the Plaintiffs and not any Bankruptcy Trustee.  That these claims arose "post-petition" and are not the property of any bankruptcy estate.

20

CLASS ACTION COMPLAINT
*KRAL v GMAC MORTGAGE, LLC*

99. That in each case, GMAC does not manufacture false declarations and submit ILLUSINARY TRANSFER DOCUMENTS until after a bankruptcy petition is filed.

100.    That GMAC engages in TILA violations and\or deceptive business practices in REACTION to loan defaults and the filing of a bankruptcy petition by consumer debtors.  Therefore, those Plaintiffs have exclusive standing to pursue these claims.

101.    That KRAL remains on title and in possession of the subject property.

102.    That KRAL remains indebted to the true beneficiary of the MLN.

## V.    Class Action Allegations

103.    Plaintiff incorporates the allegations above in this claim as though fully set forth herein.

104.    Either GMAC is systemically failing to provide the TILA transfer Notice to borrowers under the requirements of Section 1641(g) or, as is more likely, that GMAC is engaged in systemic fraud upon the Bankruptcy Courts, class members and its other bankruptcy players for financial gain.

105.    Plaintiffs bring this action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of the themselves and on the following Classes:

21

CLASS ACTION COMPLAINT
*KRAL v GMAC MORTGAGE, LLC*

(1) All consumer borrowers who did not receive a timely Transfer Notice from GMAC with 30 days after defendant became the creditor of a MLN, pursuant to 15 USC § 1641, by way of recorded assignment or other form of transfer.

(2) All California debtors, as defined under the U.S. Bankruptcy, in whose cases GMAC appeared and asserted standing as a creditor or the exclusive party in interest in any bankruptcy matter premised on false, inaccurate, misleading or deceptive documents.

106.    Excluded from the Class are defendants, and their affiliates, subsidiaries, current or former employees, officers, directors, agents, representatives, and their family members.

107.    Plaintiffs do not know the exact size or identities of the members of the proposed class, since such information is in the exclusive control of the Defendants.  Plaintiff is informed and believes and alleges thereon the class ONE size consists of anywhere from 15,000 to 20,000 consumer borrowers. Plaintiff is informed and believes and alleges thereon the class TWO size consists of anywhere from 2,000 to 4,000 bankruptcy debtors.  Therefore, the proposed Class is so numerous that joinder of all members is impracticable.

108.    A class action is superior to other methods for the fast and efficient adjudication of this controversy and to avoid the risk of disparate and inconsistent rulings in different courts.  A class action regarding the issues in this case does not create any problems of manageability.

22

**CLASS ACTION COMPLAINT**
**KRAL v GMAC MORTGAGE, LLC**

109.    A pattern and practice of conduct by defendants exist in this case wherein common questions of fact and law predominate over any questions affecting only individual members including, but not limited to the following:

    a.  Whether defendant's actions or failure to act constituted a violation of 15 USC §1641g;

    b.  When and whether GMAC  became a creditor as defined 15 USC §1641g;

    c.  Whether the previously described ILLUSINARY TRANSFER DOCUMENTS are false, misleading anti-competitive or deceptive;

    d.  Whether GMAC is estopped from denying the truth of the matters asserted in various title filings and other documents filed in bankruptcy matters;

    e.  Whether defendant's actions, failure to act, representations and assertions in bankruptcy matters constitute a violation of California Business & Professions Code §17200;

    f.  Whether defendant's actions are systemic and constitute a business pattern or practice;

    g.  The affect of defendant's business practice on competition with other loan servicers and lenders engaging in a bankruptcy and foreclosure practices;

    h.  The amount of damages appropriate for violation of 15 §1641g and\or Cal B&P §17200 in this context;

CLASS ACTION COMPLAINT
*KRAL v GMAC MORTGAGE, LLC*

i.  The amount of court sanctions and punitive damages appropriate for violation of 15 §1641g and\or Cal B&P §17200 in this context;

j.  The amount of restitution and disgorgement appropriate for violation of 15 §1641g and\or Cal B&P §17200 in this context;

k.  The amount of cost savings benefiting GMAC  from the deceptive practices violating 15 §1641g and\or Cal B&P §17200 in this context;

l.  The effect of vacating Bankruptcy Orders, claims and awards granted based on the alleged deceptive business practice;

m.  The degree, scope and cost of implementing remedial processes and oversight of GMAC 's future bankruptcy and foreclosure practices;

n.  Whether injunctive relief is appropriate.

110.  This is a matter of important public policy because the fair treatment of distressed borrowers is state and national policy priorities.

111.  The claims of the individual named Plaintiffs are typical of the claims of the Class and do not conflict with the interests of any other members of the Class.

112.  The individually named Plaintiffs will fairly and adequately protect the interests of the Class.  They are committed to the vigorous prosecution of the Class' claims and have retained attorneys who are qualified to pursue this litigation.

CLASS ACTION COMPLAINT
*KRAL v GMAC MORTGAGE, LLC*

113.     The putative class action meets the requirements of Federal Rules of Civil

Procedure 23(a), 23(b) and/or 23(c).

114.     The nature of notice to the proposed class required and/or contemplated is

the best practicable method possible and contemplated the defendant's list when

disclosed would most likely be media outlets, mailing to the property addresses

affected by the filed foreclosures and internet and other general notices are

contemplated to ensure notice.

115.     Defendants have acted or refused to act on grounds that apply generally to

the Class so that final injunctive relief or corresponding declaratory relief is

appropriate respecting the Class as a whole.


## VI.   CLAIMS

### FIRST CLAIM
### 15 USC §1641g Violation
### (Against GMAC)

116.     Plaintiffs incorporate the allegations above in this claim as though fully

set forth herein.

117.     Plaintiffs are informed and believes and alleges thereon that GMAC has

engaged in a pattern and practice of violating 15 USC §1641g by failing to

provide the required Transfer Notice to class members, including KRAL, within

30 days of becoming the creditor of thousands of MLNs.

25

**CLASS ACTION COMPLAINT**
*KRAL v GMAC MORTGAGE, LLC*

118.     Plaintiff KRAL brings this claim on their own behalf and on behalf of

each member of the Class described above.

119.     That, notwithstanding his Chapter 7 bankruptcy filing, KRAL has

standing to bring this FIRST cause of action.

120.     That KRAL's Chapter 7 bankruptcy Trustee was a party to the Motion for

Relief of Stay and was in possession of the ASSIGNMENT included as

evidence in the motion.

121.     That KRAL's Chapter 7 bankruptcy Trustee filed a "Report of No

Distribution" in his bankruptcy case.

122.     That the "Report of No Distribution" constitutes abandonment by the

Chapter 7 bankruptcy Trustee of any interest in this FIRST cause of action.

123.     That defendant GMAC is a "creditor" as defined under TILA.

124.     That GMAC was required to notify the Plaintiffs in writing of the transfer

of the MLN from an original lender, AMERIGROUP in the KRAL case, within

30 days of said transfer to GMAC.

125.     That pursuant to the plain language contained in each class

ASSIGNMENT, GMAC did not transfer the class MLNs for administrative

convenience as contemplated in 15 USC §1641.

**CLASS ACTION COMPLAINT**
**KRAL v GMAC MORTGAGE, LLC**

126.     That the class ASSIGNMENTS each represent that each MLNs is transferred from originator's agent MERS directly to GMAC, not as a servicer but as the direct successor of the loan originator.

127.     That the plain language of the class ASSIGNMENTS each represent that GMAC is direct successor of the loan originator, not the successor of a MBST or GSE as GMAC is expected to plead.

128.     That representation that each class MLN is transferred directly to GMAC is asserted in bankruptcy matters so as to intentionally bypasses any mention of HOW or IF the MLN was transferred to a MBST or GSE.  GMAC could not be a loan servicer of a MLN on behalf of a MBST or GSE until that MBST or GSE actually acquires rights in an MLN.

129.     That the TILA transfer notification is required to include:

   a.  The identity, address, telephone number of the new creditor;

   b.  The date of transfer;

   c.  How to reach an agent or party having authority to act on behalf of the new creditor;

   d.  The location of the place where transfer of ownership of the debt is recorded; and

   e.  Any other relevant information regarding the new creditor within 30 days of the transfer.

27

**CLASS ACTION COMPLAINT**
*KRAL v GMAC MORTGAGE, LLC*

130.    That GMAC has failed provide said notice to KRAL, and those similarly situated, within 30 days of each MLN transfer in thousands of cases.

131.    That GMAC has recorded thousands of ASSIGNMENTS of DEEDS of TRUSTS, each recorded in County Recorder's office and many subsequently presented to the US Bankruptcy court along with supporting declarations executed under penalty of perjury.

132.    That each ASSIGNMENT expressly states that a transfer of a Deed of Trust and a Promissory Note to GMAC has occurred on a specified date.

133.    That pursuant to the plain language utilized, the representations contained in each ASSIGNMENT establish that GMAC is a creditor pursuant to 15 USC §1641g.

134.    That pursuant to the plain language utilized, the representations contained in each ASSIGNMENT, a reasonable person would conclude that GMAC is a creditor effective on the specified date.

135.    That pursuant to the plain language utilized, the representations contained in each ASSIGNMENT constitutes an admission that a transfer of the rights to enforce the terms of the MLN has occurred on the specified date.

136.    That the concept of estoppels by deed applies to each ASSIGNMENT recorded by GMAC, including KRAL's.

CLASS ACTION COMPLAINT
*KRAL v GMAC MORTGAGE, LLC*

137.     That GMAC is estopped from denying the truth of the matters asserted in

each ASSIGNMENT executed by a GMAC agent, notarized and publically

recorded, including KRAL's.

138.     That GMAC is estopped from denying that is became a Creditor pursuant

to 15 USC §1641g on the date each ASSIGNMENT was executed by a GMAC

agent, notarized and publically recorded, including KRAL's.

139.     That GMAC is estopped from denying that it became a Creditor pursuant

to 15 USC §1641g on the date the KRAL ASSIGNMENT was executed,

January 10, 2011.

140.     That as a result of defendants' violation of 15 USC §1641g, KRAL and

other similarly situated class members due process rights for notice and

opportunity to be heard were violated; each of them has incurred attorney's fees

and expenses in attempting discover the identity of the true creditor, the validity

of GMAC's status as a creditor and\or loan servicer.

141.     Plaintiff is informed and believes and alleges thereon that GMAC's

conduct was part of a pattern and practice resulting in the same injury to a

multitude of similarly situated (former) homeowners.

142.     That each of these class members is facing imminent foreclosure and

desires to negotiate in good faith and receive fair consideration under various

**CLASS ACTION COMPLAINT**
*KRAL v GMAC MORTGAGE, LLC*

government loan modification programs, including the Home Affordable

Mortgage Program.

143.     That the withholding of the TILA transfer notice has caused additional

actual damages in the form of emotional suffering for class members already

under extreme stress.

144.     Furthermore, that the knowledge as to the true identity and contact

information of the true creditor of a class member's MLN is elusive in the

current environment of mortgage securitization.  As such, this information is has

tangible and provable financial value to a homeowner facing financial distress.

A loan modification has measurable real financial value.  Therefore, the

CHANCE to successfully negotiate a loan modification has monetary value.

145.     That by withholding information required by TILA regarding the identity

of the new MLN creditor, GMAC has exasperated the hardships of class

members and caused actual financial damages.

146.     That a showing of actual damages by KRAL or any class member is not a

required element under 15 USC §1641g.

147.     That notwithstanding a showing of actual damages, TILA allows for

statutory damages and attorney fees for GMAC's violations.

30

CLASS ACTION COMPLAINT
*KRAL v GMAC MORTGAGE, LLC*

148.     Those Plaintiffs have been damaged in a similar amount to be proven at

trial, including but not limited to actual damages resulting from said violation,

statutory damages of $4,000.00 per homeowner, attorney fees and costs.

149.     That 15 USC §1641g contemplates a limitation of $500,000.00 in class

action matters.

150.     That given the size of the class and the availability of statutory damages

in this FIRST cause of action, a showing of actual damages will not likely be

necessary to reach the class action damage limit.


### SECOND CLAIM
### Unfair and Unlawful Practices
### (Against All defendants and Does 1 through 10)

151.     That Plaintiff KRAL incorporates in this claim all of the allegations above

as though set forth in full herein.

152.     Plaintiff KRAL brings this claim on their own behalf and on behalf of

each member of the Class described above as an alternative theory to the FIRST

cause of action.

153.     California's Unfair Competition Law (UCL) defines unfair competition to

include any "unlawful, unfair, or fraudulent" business act or practice. Cal Bus &

Prof Code §17200 et seq.

31

**CLASS ACTION COMPLAINT**
*KRAL v GMAC MORTGAGE, LLC*

154.     As stated above, defendant engage in unlawful, deceptive, misleading and anti-competitive business practices under the UCL based on deceit upon the bankruptcy court, perjury, fraud, intentional misrepresentation, negligent misrepresentation, contractual interference and conversion as alleged above.

155.     That GMAC, and its agents, are is in the practice of manufacturing chain of title transfer evidence on demand so as to prove standing as a creditor in thousands of bankruptcy matters.

156.     As stated above, that through use of manufactured evidence, that defendant has systemically deceived the bankruptcy court and other bankruptcy players as to the identity of the true beneficiary or creditor of the class members' MLNs including KRAL's.

157.     That GMAC has created fabricated documents and false affidavits ("ILLUSINARY TRANSFER DOCUMENTS") so as to create the illusion that GMAC was a transferee of class member MLNs on a date certain and in the manner represented to the bankruptcy players.

158.     That GMAC violated federal perjury statute. 18 U.S.C. 1621.

159.     Under 18 U.S.C. 1621

Whoever—
**(1)** having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed,

32

is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

**(2)** in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, **willfully subscribes as true any material matter which he does not believe to be true**;

is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States.

160.     On June 24, 2011, GMAC's agent filed a Motion for Relief from the Automatic Stay and a declaration under penalty of perjury representing that GMAC was the party entitled to enforce the terms of the KRAL's MLN based on the attached ASSIGNMENT and blank endorsed note.

161.     That these ILLUSINARY TRANSFER DOCUMENTS were authentic in appearance and submitted to induce the court to relieve GMAC from the automatic stay based on the false assertion that the MLN transfer occurred as represented.

162.     That the MLN transfers do NOT occur as represented in the ASSIGNMENTS or supporting affidavits filed in class members' bankruptcy cases.

163.     That the affidavit submitted in KRAL's Motion for Relief was signed by GMAC Bankruptcy Specialist JOHN CASTAGNA on June 21, 2011 and

33

CLASS ACTION COMPLAINT
*KRAL v GMAC MORTGAGE, LLC*

incorporated the ASSIGNMENT OF DEED OF TRUST, the endorsed blank Note and the original Deed of Trust by reference.

164.     The "ASSIGNMENT OF DEED OF TRUST" was filed with the Riverside County Recorders January 14, 2011 was attached to GMAC's motion for relief from stay in the KRAL bankruptcy case.

165.     That on January 10, 2011, FRANCO TORRES, Assistant Secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") executed an ASSIGNMENT OF DEED OF TRUST that purported to grant, assign and transfer to GMAC all beneficial interest under the subject Deed of Trust, "Together with the Promissory Note secured by the Deed of Trust and all rights accrued or to accrue under the Deed of Trust."

166.     That the ASSIGNMENT OF DEED OF TRUST was purportedly notarized by AMBER BARHAM and recorded in the Riverside County Recorder's Office on January 14, 2011.

167.     That GMAC offered said ASSIGNMENT as proof it owned KRAL's loan and therefore, that GMAC had standing to bring the Motion for Relief of Stay.

168.     That GMAC offered said blank Note endorsement as proof it owned KRAL's loan and therefore, that GMAC had standing to bring the Motion for Relief of Stay.

34

**CLASS ACTION COMPLAINT**
***KRAL v GMAC MORTGAGE, LLC***

169. That GMAC offered said CASTAGNA affidavit as proof it owned KRAL's loan and therefore, that GMAC had standing to bring the Motion for Relief of Stay.

170. That each of these documents supported the same misrepresentation, that the transfer of the KRAL MLN occurred in the manner represented and that GMAC had standing as a creditor in bankruptcy court.

171. That each of these documents was created by GMAC and its agents for the purpose of creating the illusion of a valid MLN transfer, to deceive the bankruptcy players as to the existence of the transaction, to deceive the bankruptcy players as to GMAC's standing as a creditor and to prevail in the Motion for Relief of Stay with the least amount of opposition.

172. That each of the aforementioned representations in the KRAL and MILLER cases are material in establishing standing and obtaining relief from the automatic stay.

173. Plaintiff is informed and believes and alleges thereon that GMAC did not believe any of these facts when it represented to the court under penalty of perjury.

**CLASS ACTION COMPLAINT**
*KRAL v GMAC MORTGAGE, LLC*

174.    In no uncertain terms, GMAC represented to bankruptcy players that all rights to the KRAL MLN including all rights to collect the money due under said Notes, had passed to GMAC in the time and manner represented.

175.    That the facts set forth in the KRAL case are typical of the facts surrounding of each class members bankruptcy matter.  That the KRAL case provides a typical example of the deceptive business practice utilized by GMAC in thousands of bankruptcy cases.  That these described deceptive business practices are not limited to the KRAL bankruptcy matter.  That the same deceptive business practices have been employed in each and every bankruptcy matter wherein GMAC appears as a mortgage creditor.

176.    That GMAC does not represent itself to the bankruptcy players to be a loan servicer or agent of the true creditor in class bankruptcy matters but the actual creditor entitled to the monies due under the MLN.

177.    That GMAC does not assert in class members' bankruptcy matters that it takes title to MLNs directly from the true creditor solely for administrative convenience.  Instead, it claims it takes title directly from the loan originator.

178.    That GMAC does not assert in the KRAL, MILLER and other class member bankruptcy matters that it takes title to MLNs jointly, partially or on behalf of the true creditor.

CLASS ACTION COMPLAINT
*KRAL v GMAC MORTGAGE, LLC*

179.     That such a position would require GMAC to prove HOW the true

beneficiary came to acquire the MLN from the originator which is exactly the

undertaking that GMAC seeks to avoid through this deceptive practice.

180.     That GMAC creates the illusion of a chain of title transfer as to each class

member MLNs that are false, misleading, inaccurate and manufactured for the

sole purpose of deceiving the bankruptcy players into accepting GMAC's

version of the chain of title transfers without regard to the truth.

181.     A debt collector violates 15 USC 1692f by

**(6)** Taking or threatening to take any nonjudicial action to effect
dispossession or disablement of property if—
**(A)** there is no present right to possession of the property claimed as
collateral through an enforceable security interest;
**(B)** there is no present intention to take possession of the property; or
**(C)** the property is exempt by law from such dispossession or disablement.

182.     As stated above, GMAC, individually and through its authorized

representatives, has caused thousands of false and fabricated declarations,

assignments, endorsements, proofs of claim and motions made under penalty of

perjury to be filed with the United States Bankruptcy Court in each of the class

bankruptcy case.

183.     California Penal Code §532 states:

```
532.  (a) Every person who knowingly and designedly, by any false or
fraudulent representation or pretense, defrauds any other person of
money, labor, or property, whether real or personal, or who causes or
procures others to report falsely of his or her wealth or mercantile
```

37

**CLASS ACTION COMPLAINT**
***KRAL v GMAC MORTGAGE, LLC***

character, and by thus imposing upon any person obtains credit, and thereby fraudulently gets possession of money or property, or obtains the labor or service of another, is punishable in the same manner and to the same extent as for larceny of the money or property so obtained.

(b) Upon a trial for having, with an intent to cheat or defraud another designedly, by any false pretense, obtained the signature of any person to a written instrument, or having obtained from any person any labor, money, or property, whether real or personal, or valuable thing, the defendant cannot be convicted if the false pretense was expressed in language unaccompanied by a false token or writing, unless the pretense, or some note or memorandum thereof is in writing, subscribed by or in the handwriting of the defendant, or unless the pretense is proven by the testimony of two witnesses, or that of one witness and corroborating circumstances. This section does not apply to a prosecution for falsely representing or personating another, and, in that assumed character, marrying, or receiving any money or property.

Penal Code §532f states:
532f.   (a) A person commits mortgage fraud if, with the intent to defraud, the person does any of the following:

(1) Deliberately makes any misstatement, misrepresentation, or omission during the mortgage lending process with the intention that it be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process.

(2) Deliberately uses or facilitates the use of any misstatement, misrepresentation, or omission, knowing the same to contain a misstatement, misrepresentation, or omission, during the mortgage lending process with the intention that it be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process.

(3) Receives any proceeds or any other funds in connection with a mortgage loan closing that the person knew resulted from a violation of paragraph (1) or (2) of this subdivision.

(4) Files or causes to be filed with the recorder of any county in connection with a mortgage loan transaction any document the person knows to contain a deliberate misstatement, misrepresentation, or omission.

(b) An offense involving mortgage fraud shall not be based solely on information lawfully disclosed pursuant to federal disclosure laws, regulations, or interpretations related to the mortgage lending process.

(c) (1) Notwithstanding any other provision of law, an order for the production of any or all relevant records possessed by a real estate recordholder in whatever form and however stored may be issued by a judge upon a written ex parte application made under penalty of perjury by a peace officer stating that there are reasonable grounds to believe that the records sought are relevant and material to an ongoing investigation of a felony fraud violation.

(2) The ex parte application shall specify with particularity the records to be produced, which shall relate to a party or parties in the criminal investigation.

(3) Relevant records may include, but are not limited to, purchase contracts, loan applications, settlement statements, closing

**CLASS ACTION COMPLAINT**

*KRAL v GMAC MORTGAGE, LLC*

statements, escrow instructions, payoff demands, disbursement
reports, or checks.
   (4) The ex parte application and any subsequent judicial order may
be ordered sealed by the court upon a sufficient showing that it is
necessary for the effective continuation of the investigation.
   (5) The records ordered to be produced shall be provided to the
peace officer applicant or his or her designee within a reasonable
time period after service of the order upon the real estate
recordholder.
   (d) (1) Nothing in this section shall preclude the real estate
recordholder from notifying a customer of the receipt of the order
for production of records, unless a court orders the real estate
recordholder to withhold notification to the customer upon a finding
that this notice would impede the investigation.
   (2) If a court has made an order to withhold notification to the
customer under this subdivision, the peace officer who or law
enforcement agency that obtained the records shall notify the
customer by delivering a copy of the ex parte order to the customer
within 10 days of the termination of the investigation.
   (e) (1) Nothing in this section shall preclude the real estate
recordholder from voluntarily disclosing information or providing
records to law enforcement upon request.
   (2) This section shall not preclude a real estate recordholder, in
its discretion, from initiating contact with, and thereafter
communicating with and disclosing records to, appropriate state or
local agencies concerning a suspected violation of any law.
   (f) No real estate recordholder, or any officer, employee, or
agent of the real estate recordholder, shall be liable to any person
for either of the following:
   (1) Disclosing information in response to an order pursuant to
this section.
   (2) Complying with an order under this section not to disclose to
the customer the order, or the dissemination of information pursuant
to the order.
   (g) Any records required to be produced pursuant to this section
shall be accompanied by an affidavit of a custodian of records of the
real estate recordholder or other qualified witness which states, or
includes in substance, all of the following:
   (1) The affiant is the duly authorized custodian of the records or
other qualified witness and has authority to certify the records.
   (2) The identity of the records.
   (3) A description of the mode of preparation of the records.
   (4) The records were prepared by the personnel of the business in
the regular course of business at or near the time of an act,
condition, or event.
   (5) Any copies of records described in the order are true copies.
   (h) A person who violates this section is guilty of a public
offense punishable by imprisonment in a county jail for not more than
one year or by imprisonment pursuant to subdivision (h) of Section
1170.
   (i) For the purposes of this section, the following terms shall
have the following meanings:
   (1) "Person" means any individual, partnership, firm, association,
corporation, limited liability company, or other legal entity.
   (2) "Mortgage lending process" means the process through which a

39

**CLASS ACTION COMPLAINT**

*KRAL v GMAC MORTGAGE, LLC*

person seeks or obtains a mortgage loan, including, but not limited
to, solicitation, application, origination, negotiation of terms,
third-party provider services, underwriting, signing and closing, and
funding of the loan.
    (3) "Mortgage loan" means a loan or agreement to extend credit to
a person that is secured by a deed of trust or other document
representing a security interest or lien upon any interest in real
property, including the renewal or refinancing of the loan.
    (4) "Real estate recordholder" means any person, licensed or
unlicensed, that meets any of the following conditions:
    (A) Is a title insurer that engages in the "business of title
insurance" as defined by Section 12340.3 of the Insurance Code, an
underwritten title company, or an escrow company.
    (B) Functions as a broker or salesperson by engaging in any of the
type of acts set forth in Sections 10131, 10131.1, 10131.2, 10131.3,
10131.4, and 10131.6 of the Business and Professions Code.
    (C) Engages in the making or servicing of loans secured by real
property.
    (j) Fraud involving a mortgage loan may only be prosecuted under
this section when the value of the alleged fraud meets the threshold
for grand theft as set out in subdivision (a) of Section 487.

## 1692e. False or misleading representations

A debt collector may not use any false, deceptive, or misleading representation or means

in connection with the collection of any debt. Without limiting the general application of

the foregoing, the following conduct is a violation of this section:

(1) The false representation or implication that the debt collector is vouched for, bonded

by, or affiliated with the United States or any State, including the use of any badge,

uniform, or facsimile thereof.

(2) The false representation of—

(A) the character, amount, or legal status of any debt; or

(B) any services rendered or compensation which may be lawfully received by any debt

collector for the collection of a debt.

(3) The false representation or implication that any individual is an attorney or that any

communication is from an attorney.

(4) The representation or implication that nonpayment of any debt will result in the arrest

or imprisonment of any person or the seizure, garnishment, attachment, or sale of any

CLASS ACTION COMPLAINT

*KRAL v GMAC MORTGAGE, LLC*

property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

(6) The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to—

(A) lose any claim or defense to payment of the debt; or

(B) become subject to any practice prohibited by this subchapter.

(7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

184.     Alternatively, if GMACs systemic conduct does not rise to the level of "unlawful" under the perjury statute, it rises to level of being an "unfair" or "fraudulent" business practice.

185.     That GMAC continues this deceptive business practice of manufacturing evidence to support its advocacy in bankruptcy matters in violation of existing "Consent Orders" to refrain from wrongful and deceptive foreclosure practices.

186.     That GMAC continues to present evidence and assertions as to the chain of title transfers of MLNs in consumer bankruptcy cases, that GMAC either knows to be false or where GMAC has no reason to believe that these assertions contained in these documents are true.

**CLASS ACTION COMPLAINT**
***KRAL v GMAC MORTGAGE, LLC***

187.    That GMAC engages in this deceptive business practice for its own financial benefit, at the expense of class members and with complete distain for the bankruptcy court system.

188.    GMAC is motivated by cost savings relative to its competitors and therein gains an unfair competitive advantage over its legitimate industry rivals.

189.    That GMAC apparently views the requirement of standing in the bankruptcy system as a costly barrier to getting what it wants:  the quick and inexpensive resolution to thousands of bankruptcy maters with minimal opposition.

190.    Rather than satisfy its burden of proof to establish standing, GMAC has determined that manufacturing evidence to accomplish its goals and chill opposition is a more cost effective business practice.

191.    As stated, the process of proving up standing for a GSE or Mortgage Backed Security Trust typically involves proving three true sales of a given MLN (From Originator to Sponsor to Depositor to the Trust).  GMAC utilizes this deceptive business practice to avoid the costs associated with this prove up.

192.    To GMAC, the ends justify the means:  Whether there is a lack of ANY evidence of a GSE or MBSTs standing or where GMAC views the cost of proving up THREE MLNs transfers is too high, GMAC efficiently avoids the challenge utilizing the business practice of manufacturing evidence.

42

193.     The cost savings benefits to GMAC are estimated to be in the tens of millions in saved legal fees, technology costs and increased time to foreclosure.

194.     Through the utilization of this practice, GMAC receives additional financial benefits including trustee payouts from confirmed plans based on submitted Proofs of Claim supported by fabricated evidence.  Said payouts are at the expense of unsecured creditors and debtors alike.

195.     Most egregiously, the network attorneys utilize the business practice to obtain attorney fees awards from by the bankruptcy judges ranging from $600-$1000 for each successful motion for relief of stay and allowed proofs of claim. Said awards allow GMAC to pad its claims and add fees to the loan balances arrearage claims of class members.

196.     That GMAC's manufactured evidence is so persuasive that 95% of motions for relief of stay are granted without opposition and over 95% of GMAC's Proofs of Claims are allowed.

197.     That the systemic use of the fabricated evidence has a chilling effect on class debtors and their attorneys.  Said business practice discourages bankruptcy players from offering objections or from questioning the validity of GMAC's false claims based on standing.

198.     That the systemic use of the fabricated evidence provides GMAC  with an unfair competitive advantage over other loan servicers and lender s who must

43

**CLASS ACTION COMPLAINT**
*KRAL v GMAC MORTGAGE, LLC*

1    bear the cost of proving up bankruptcy matters without the benefit of utilizing

2    fabricated evidence to fit the desired outcome.

3

4    199.    That the fabricated title documents and affidavits used by GMAC , while

5    persuasive, are blatant misrepresents the chain of title transfer of class member's

6    MLN and affront to the integrity of the legal system.

7

8    200.    That after a non-judicial foreclosure sale, class members remain indebted

9    to the true beneficiary for the unsecured note but without credit for the loss of

10   the collateral to GMAC.  Said business practice also harms the true creditors.

11

12   201.    As stated, GMAC has engaged in the aforementioned fraudulent, unfair,

13   deceptive and misleading business practices under the UCL by manufacturing

14   evidence to obtain its desired outcome in thousands of bankruptcy matters.

15

16   202.    Plaintiffs are further informed and believe and allege thereon that each of

17   these defendants' business practices are likely to continue to deceive the public

18   and are likely to continue to induce bankruptcy players including  other class

19   members  into relying to their detriment on false representations made in title

20   documents and affidavits offered in bankruptcy matters.

21

22   203.    Defendants' acts, and each of them, violate the unfair competition laws of

23   the state of California and specifically California Business and Professions Code

24   §§ 17200, et seq. as indicated above.

25

26                                    **44**

27

28

**CLASS ACTION COMPLAINT**
***KRAL v GMAC MORTGAGE, LLC***

204.     As a proximate result of defendants' conduct, plaintiffs, each of them, was injured financially and/or to her property rights.  Said conduct as set forth herein resulted in statutory, general and special damages.

205.     Plaintiffs are further entitled to injunctive relief and any other equitable relief that the court deems appropriate.

Wherefore plaintiff demands judgment against defendants as set forth below.

## VII.  <u>PRAYER FOR RELIEF</u>

**WHEREFORE, Plaintiffs pray for judgment** against defendants, and each of them, as follows:

a.  A determination whether and when GMAC became a creditor as defined 15 USC §1641g.

b.  A determination whether GMAC  violated the Notice requirements of 15 USC §1641g:

c.  A determination whether GMAC  has admitted or is estopped from denying the truth of the matters asserted in various title and other documents offered in bankruptcy matters;

45

**CLASS ACTION COMPLAINT**
***KRAL v GMAC MORTGAGE, LLC***

d. An order certifying the plaintiff TILA class, appointing named plaintiffs as the representatives of the class and appointing the law firm(s) representing the named plaintiffs as counsel for the TILA class;

e. A determination whether defendant's business practices, actions, failures to act, representations and assertions in bankruptcy matters constitute violations of California Business & Professions Code §17200;

f. In the alternative, an order certifying the plaintiff §17200 class, appointing named plaintiffs as the representatives of the class and appointing the law firm(s) representing the named plaintiffs as counsel for the §17200 class;

g. Pursuant to Business and Professions Code § 17203, an order that all Defendants, their successors, agents, representatives, employees, and all persons who act in concert with them be permanently enjoined from committing any acts of unfair competition in violation of § 17200, including, but not limited to, the violations alleged herein.

h. A determination of the amount of actual, special and general damages appropriate for violation of 15 §1641g and\or Cal B&P §17200 in this context;

i. A determination of the amount of statutory damages and civil penalties appropriate for violation of 15 §1641g and\or Cal B&P §17200 in this context;

j. A determination of the amount of court sanctions and punitive damages appropriate for violation of 15 §1641g and\or Cal B&P §17200 in this context;

46

**CLASS ACTION COMPLAINT**
***KRAL v GMAC MORTGAGE, LLC***

k.  A determination of the amount of restitution and disgorgement appropriate for violation of 15 §1641g and\or Cal B&P §17200 in this context;

l.  A determination of the amount of cost savings benefiting GMAC from the deceptive practices violating 15 §1641g and\or Cal B&P §17200 in this context;

m. An Order vacating all Bankruptcy orders, claims and awards granted based on GMAC 's misrepresentations and deceptive business practices;

n.  An Order directing GMAC to implement remedial processes and oversight of GMAC 's future bankruptcy and foreclosure practices;

o.  Costs

p.  Attorney fess

q.  Prejudgment interest at the statutory rate;

r.  Post-judgment interest;

s.  Such other and further relief as the Court finds necessary and proper.

**CLASS ACTION COMPLAINT**
*KRAL v GMAC MORTGAGE, LLC*

# VIII. <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a jury trial.

Dated:  February 6, 2012          LAW OFFICES OF J.ARTHUR ROBERTS

/s/    Joseph Arthur Roberts
JOSEPH ARTHUR ROBERTS, ESQ.
Attorney for Plaintiffs KRAL, and all others
similarly situated

48

**CLASS ACTION COMPLAINT**
*KRAL v GMAC MORTGAGE, LLC*